01

02

03

04

05

06                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
07                                  AT SEATTLE

08  RICHARD L. COCHRUN,                  )
                                         )    CASE NO. C12-2124-MJP-MAT
09          Plaintiff,                   )
                                         )
10      v.                               )
                                         )    REPORT AND RECOMMENDATION
11  CAROLYN W. COLVIN, Acting            )    RE: SOCIAL SECURITY
    Commissioner of Social Security,[1]  )    DISABILITY APPEAL
12                                       )
            Defendant.                   )
13  _____ )

14          Plaintiff Richard L. Cochrun proceeds through counsel in his appeal of a final decision

15  of the Commissioner of the Social Security Administration (Commissioner).      The

16  Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) and

17  Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge

18  (ALJ).   Having considered the ALJ's decision, the administrative record (AR), and all

19  memoranda of record, the Court recommends that this matter be reversed and remanded for

20  further administrative proceedings.

21  _____

22          [1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social
    Security Administration.   Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W.
    Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01       **<u>FACTS AND PROCEDURAL HISTORY</u>**

02      Plaintiff was born on XXXX, 1978.[2]  He did not graduate from high school, and has

03 not received a GED.  (AR 37-38.)

04      Plaintiff filed applications for DIB and SSI on January 14, 2010, alleging a disability

05 onset date of July 15, 2009.  (AR 138-43.)  The applications were denied, initially and on

06 reconsideration.  (AR 69-84.)  Plaintiff timely requested a hearing. (AR 85-87.)

07      On July 12, 2011, ALJ Cheri L. Filion held a hearing, taking testimony from Plaintiff

08 and a vocational expert.  (AR 32-64.)  On October 26, 2011, the ALJ issued a decision finding

09 Plaintiff not disabled.  (AR 17-26.)  Plaintiff timely appealed.  The Appeals Council denied

10 Plaintiff's request for review on October 11, 2012 (AR 1-4), and Plaintiff appealed this final

11 decision of the Commissioner to this Court.

12                  **<u>JURISDICTION</u>**

13      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §

14 405(g).

15                  **<u>DISCUSSION</u>**

16      The Commissioner follows a five-step sequential evaluation process for determining

17 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

18 must be determined whether the claimant is gainfully employed.  The ALJ found Plaintiff had

19 not engaged in substantial gainful activity since July 15, 2009, the alleged onset date.  (AR

20

21       [2] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic

22 Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01   19.)  At step two, it must be determined whether a claimant suffers from a severe impairment.

02   The ALJ found Plaintiff's bipolar disorder, and cannabis and alcohol abuse (both in

03   remission) to be severe impairments.  (AR 19-20.)  Step three asks whether a claimant's

04   impairments meet or equal a listed impairment.  The ALJ found that Plaintiff's impairments

05   did not meet or equal the criteria of a listed impairment. (AR 20-22.)

06        If a claimant's impairments do not meet or equal a listing, the Commissioner must

07   assess residual functional capacity (RFC) and determine at step four whether the claimant has

08   demonstrated an inability to perform past relevant work.  The ALJ found Plaintiff capable of

09   performing a full range of work at all exertional levels, but with these non-exertional

10   limitations: he can sustain simple repetitive tasks for at least two hours during an eight-hour

11   workday, he can work with a supervisor and "a few co-workers," and he should avoid

12   working with the general public.  (AR 22-25.)  With that assessment, the ALJ found at step

13   four that Plaintiff could perform his past relevant work as a window cleaner and shipping

14   receiver/weigher.  (AR 26.)  The ALJ did not proceed to step five.

15        This Court's review of the ALJ's decision is limited to whether the decision is in

16   accordance with the law and the findings supported by substantial evidence in the record as a

17   whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means

18   more than a scintilla, but less than a preponderance; it means such relevant evidence as a

19   reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

20   F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

21   supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

22   F.3d 947, 954 (9th Cir. 2002).

01      Plaintiff alleges that the ALJ erred in four ways: (1) the ALJ erred in finding that

02 Plaintiff's bipolar disorder did not meet the "paragraph C" criteria for Listing 12.04; (2) the

03 ALJ erred in discounting Plaintiff's credibility; (3) the ALJ gave insufficient reasons to

04 discount the June 2011 opinion of consultative psychologist Lucy Carstens, Ph.D.; and (4) the

05 ALJ did not account for all of Plaintiff's impairments in the RFC assessment.    The

06 Commissioner contends that the ALJ's decision is supported by substantial evidence and free

07 from legal error.

08                                    Listing 12.04

09      The ALJ summarily found that Plaintiff did not meet the paragraph C(2) criteria for

10 Listing 12.04, which is met in situations where a qualifying claimant with bipolar syndrome

11 has "a residual disease process that has resulted in such marginal adjustment that even a

12 minimal increase in mental demands or change in the environment would be predicted to

13 cause the individual to decompensate."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C)(2).

14 Plaintiff's counsel's opening statement at the administrating hearing implicitly invoked this

15 section, and Plaintiff himself testified that he believed that the only reason he was doing well

16 at that time was due to his "structured environment where I've taken all the stress out of my

17 life and I'm living it at home with my parents' guidance on almost everything I do.  Tell me,

18 you know, everything from meals to stuff around the house.  Anything outside of that and I

19 just kind of lose it."  (AR 35-36, 44.)  That the ALJ did not explain in detail why Plaintiff did

20 not meet Listing 12.04(C)(2) is the basis of Plaintiff's first assignment of error.

21      While it is true that the use of boilerplate language in step-three findings is legally

22 insufficient, Plaintiff cited no medical evidence to support the argument of counsel or his own

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01  testimony that he met the Listing 12.04(C)(2) criteria.  No medical provider indicated that

02  Plaintiff would be expected to decompensate with a minimal increase in mental demands or a

03  change in environment; Plaintiff's citation to Dr. Carstens' January 2011 consultative

04  examination report noting Plaintiff's self-reported "breakthrough" manic episodes despite

05  medication is unavailing for this purpose, because it suggests only that Plaintiff's condition

06  may not be well-controlled by medication, but not that those breakthrough episodes occurred

07  as a result of increased mental demands or a change in environment.  (AR 381.)[3]

08        Because Plaintiff failed to present medical evidence suggesting that he satisfied

09  Listing 12.04(C)(2), any error resulting from the ALJ's use of boilerplate language in the

10  step-three findings is harmless.  *See, e.g.*, *Browning v. Astrue*, 2010 WL 1511667, at *6 (D.

11  Ariz. Apr. 15, 2010) (". . . [E]ven if the ALJ's discussion at step three was insufficient as it

12  relates to either the heart or spinal impairments, this error was harmless because . . . the record

13  is devoid of evidence establishing that [the claimant's] impairments met or equaled any listed

14  impairment, and [the claimant] points the Court to none.").

15                                          Credibility

16        Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

17  reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

18  "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

19  inconsistencies either in his testimony or between his testimony and his conduct, his daily

20  activities, his work record, and testimony from physicians and third parties concerning the

21  _____

22  [3] The Court also notes that Plaintiff did not report breakthrough episodes to the providers
responsible for managing his medication.  *See* AR 388-406 (treatment notes from May 2010 through
April 2011).

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

nature, severity, and effect of the symptoms of which he complains." *Light v. Comm'r of Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, the ALJ provided only one reason to discount Plaintiff's credibility — the fact that Plaintiff's bipolar disorder is generally well-controlled with medication, assuming Plaintiff remains sober. (AR 23.) The ALJ asserted that the record shows that Plaintiff's "bipolar exacerbations are connected directly to his failure to use prescribed medication and use of alcohol and marijuana." *Id.* To support that assertion, the ALJ noted that Plaintiff had not had "any significant [manic] episodes since August 2009," since which time he has been medicated and abstained from drug and alcohol use. *Id.* The ALJ also noted that in January 2011, during the time that he was recovering from a knee surgery, he reported that he was not able to be active as a result of the surgery rather than reporting any mental health issues. *Id.* (citing AR 384).

The ALJ's reasoning is not supported by substantial evidence in the record, because the ALJ failed to address evidence that Plaintiff in January 2011 reported "breakthrough" manic episodes that interfered with his functioning, despite medication and sobriety. (AR 380-81.) Though Plaintiff reported these breakthrough episodes to his consultative examiner rather than the treating providers that managed his medications (see AR 401 (December 2010 treatment notes indicating that Plaintiff's bipolar disorder was stable on medications, with no side effects)), Plaintiff explained that discrepancy at the administrative hearing. Plaintiff testified that he is not satisfied with the "level of care" he receives from his medication managers, and that by the time he has sat for hours in the waiting room to be seen by them, he feels irritated and simply provides a minimal amount of information to receive a prescription

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01 refill.  (AR 51-54.)  Plaintiff also testified at the hearing that he attributes his ability to

02 function to his "structured environment" of living with his parents and trying to eliminate

03 stress from his life.  (AR 44.)

04     The Commissioner concedes that the ALJ's interpretation of Plaintiff's January 2011

05 comment regarding the effect of his knee surgery was taken out of context (and thus should

06 not have construed it to be inconsistent with his allegations of disabling mental symptoms),

07 but contends that nonetheless the ALJ did not err in finding that there is no evidence that

08 Plaintiff has had a significant manic episode since August 2009.  Dkt. 13 at 6-7.

09     The Commissioner fails to explain why the ALJ's finding remains valid, in light of the

10 evidence that Plaintiff reported breakthrough manic episodes during a January 2011

11 consultative examination.  This is not a situation where there is evidence in the record that

12 could be construed in a number of reasonable ways; in that situation, the Court must

13 determine whether the ALJ's interpretation is one of those reasonable constructions.  *See, e.g.*,

14 *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  This is a

15 situation where the ALJ asserts a factual statement about the record (*i.e.*, that there is no

16 evidence in the record showing that Plaintiff experienced a significant manic episode since

17 August 2009), but the accuracy of that statement is in dispute: either there is no evidence in

18 the record of a post-August 2009 significant manic episode or there is not.

19     In light of Plaintiff's report of breakthrough manic episodes in January 2011, and the

20 ALJ's failure to address that evidence, the ALJ's description of Plaintiff's history of manic

21 episodes is not accurate and is therefore not a clear and convincing reason to discount

22 Plaintiff's credibility.  *See Lingenfelter*, 504 F.3d at 1036-37 (holding that an ALJ's reason to

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01  discount credibility that is not factually accurate is not a clear and convincing reason to do

02  so).  On remand,[4] the ALJ shall reconsider her credibility determination in light of Dr.

03  Carstens' January 2011 evaluation indicating that Plaintiff experiences breakthrough manic

04  episodes even while medicated and sober, and shall develop the record on that issue as

05  necessary.[5]

06                              June 2011 Opinion of Dr. Carstens

07          Dr. Carstens completed a June 2011 evaluation form regarding Plaintiff's ability to

08  complete work-related activities.  (AR 413-14.)  She opined that he was "[u]nable to meet

09  competitive standards" in a number of categories and that his impairments would cause him to

10  be absent from work more than four days per month, but also qualified her opinion as based

11  on "limited contact" with Plaintiff.  *Id.*  The ALJ gave "little weight" to this evaluation,

12  finding that it (1) was inconsistent with Dr. Carstens's three previous evaluations (AR 275-83,

13  365-87) without an explanation of the dramatic departure, (2) failed to indicate whether the

14  form reflected Plaintiff's abilities on or off medication, and (3) inconsistent with the evidence

15  in the record as a whole.  (AR 24.)  The ALJ further noted that Dr. Carstens herself "took

16  care" to indicate that her opinion was based on the limited contact of three prior consultative

17

18          [4] Though Plaintiff requested a remand for payment of benefits, the Court finds that remand is
19  appropriate because it is not clear that if Plaintiff's testimony were credited, he would be necessarily
     found disabled. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Plaintiff argues that
20  reversing the credibility determination in combination with reversing the rejection of Dr. Carstens'
     June 2011 evaluation would establish disability (Dkt. 12 at 20), but as explained *infra*, the Court finds
     that the ALJ's rejection of Dr. Carstens' June 2011 opinion was not erroneous.

21          [5] The Court also notes that the ALJ purported to credit Dr. Carstens' January 2011 evaluation.
22  (AR 25 (indicating that the ALJ's RFC assessment is supported by, *inter alia*, Dr. Carstens' January
     2011 evaluation).)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01  examinations.  (AR 24 (citing AR 414[6]).)

02        Plaintiff argues that the ALJ's reasoning was insufficient, because the only

03  inconsistency between the previous evaluations and the June 2011 assessment cited by the

04  ALJ is Dr. Carstens' earlier opinion that Plaintiff's prognosis was "fair to good."  Dkt. 14 at 6

05  (citing AR 24).   It is true that the ALJ called attention to that discrepancy, but the ALJ also

06  noted that the June 2011 evaluation referenced more severe limitations than noted in the

07  previous evaluations.  (AR 24.)  For example, Dr. Carstens' January 2011 evaluation noted

08  moderate or severe limitations when Plaintiff was *not medicated*, but the June 2011 evaluation

09  contains no such qualifier.  *Compare* AR 381 *with* AR at 413-14.  Particularly given that Dr.

10  Carstens did not examine Plaintiff again before rendering her June 2011 opinion, the

11  divergence between the January 2011 opinion and the June 2011 opinion is troubling.  *See*

12  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record

13  properly considered by ALJ in rejection of physician's opinions).  Given that Dr. Carstens

14  herself underscored her limited contact with Plaintiff, the ALJ's reasoning in discounting the

15  value of the June 2011 is convincing.

16        Though Plaintiff suggests that the ALJ should have recontacted Dr. Carstens if she

17  was confused as to whether the June 2011 indicated Plaintiff's limitations with or without

18  medication, the Court does not interpret the ALJ's decision to indicate confusion.  The ALJ

19  noted the lack of explanation as a further reason why the June 2011 opinion was given less

20  weight: because Dr. Carstens had previously indicated that Plaintiff experienced more severe

21  _____

22        [6] It appears that Plaintiff overlooked Dr. Carstens' typed paragraph at the bottom of page 341, instead focusing only on Dr. Carstens' handwritten notes.  *See* Dkt. 14 at 7 (". . . Dr. Carstens never actually states her opinion is based on 'limited contact.'")

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01 limitations when not medicated than when medicated (see AR 368, 381), and because her

02 June 2011 opinion indicated severe symptoms without linking those to lack of medication, the

03 ALJ reasonably interpreted the June 2011 opinion as inconsistent with the earlier opinions.

04 The duty to recontact was not triggered.  *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th

05 Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is

06 ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

07 evidence.").

08                                          Dr. Regets' Opinion

09        Dr. Regets marked a checkbox on the Mental Residual Functional Capacity

10 Assessment (MRFCA) form indicating that Plaintiff was markedly limited in his ability to

11 accept instructions and respond appropriately to criticism from supervisors.  (AR 342.)  In the

12 narrative portion of the form, Dr. Regets stated that Plaintiff "is able to work with a

13 supervisor and a few co-worker[s], although when experiencing a manic episode may be

14 inappropriate."  (AR 343.)  State agency consultant Thomas Clifford, Ph.D., reviewed Dr.

15 Regets' evaluation and affirmed it except for the marked limitation as to working with

16 supervisors; Dr. Clifford indicated that this limitation should be rated "moderate" as opposed

17 to "marked."  (AR 360.)

18        The ALJ credited Dr. Regets' opinion except to the extent that he found Plaintiff

19 markedly limited in his ability to work with co-workers.  (AR 24.)  Plaintiff argues that this

20 finding was erroneous, and that the ALJ should have accounted for this limitation in the

21 Plaintiff's RFC assessment.  The Court disagrees: the ALJ properly focused on the narrative

22 portion of Dr. Regets' form.  *See* Program Operations Manual System (POMS) DI 25020.010

at B.1 (stating that ALJs should use narrative portion of MRFCA form, not checkbox portion of form, in assessing RFC).[7]  Furthermore, Dr. Clifford's partial affirmation of Dr. Regets' opinion specifically addressed the limitation at issue and indicated that it "should note Moderately Limited, not Markedly Limited."  (AR 360.)  The ALJ did not err in discounting Dr. Regets' opinion as to the supervisor limitation on these grounds.

Dr. Regets also opined that Plaintiff could sustain simple, repetitive tasks "for at least 2hrs of an 8 hr work-day."  (AR 343.)  The ALJ explained at the administrative hearing that she interpreted that opinion to mean that Plaintiff could perform simple, repetitive tasks in two-hour blocks of time:  "If it was only two hours of our eight, clearly, they would have found him to be disabled at an earlier step.  I think they meant – that is a mistype, 'at least two hours at a time in an eight hour day.' . . . Otherwise, I – there's no other way to interpret this."  (AR 62.)  Plaintiff's counsel acquiesced to this interpretation at the hearing.  *Id.*  The ALJ asked the vocational expert to presume[8] the claimant has the ability to perform simple, repetitive tasks for two-hour segments; the vocational expert testified that the inability to maintain attention for two-hour segments would preclude unskilled work.  (AR 60-61.)

The ALJ's written RFC assessment, however, did not contain the clarification that she explained at the hearing: the written decision states that Plaintiff is "capable of sustaining simple repetitive tasks for at least two hours of an eight-hour day[.]"  (AR 22.)  According to Plaintiff, the written RFC assessment is consistent with Dr. Carstens' June 2011 opinion, and

---

[7] Although the POMS "does not have the force of law" it "is persuasive authority." *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

[8] The ALJ did not formulate a hypothetical; instead, she asked the vocational expert to review various exhibits in the record and indicate whether the limitations included therein would preclude unskilled work.  (AR 59-63.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01  should have been adopted as written.  Dkt. 14 at 8-9.  But, as explained *supra*, the ALJ

02  provided valid reasons to discount Dr. Carstens' June 2011 opinion, and provided further

03  clarification as to her RFC assessment at the hearing (which was accepted by Plaintiff's

04  counsel at that time).  Any error resulting from the discrepancy between the written RFC

05  assessment and the RFC discussion at the hearing is harmless, because the record makes clear

06  that the vocational expert understood the ALJ to be presuming an ability to sustain simple,

07  repetitive tasks for two-hour segments of time, and testified that that ability was consistent

08  with unskilled work.

09  <u>**CONCLUSION**</u>

10        For the reasons set forth above, the Court recommends that this matter be REVERSED

11  and REMANDED for further administrative proceedings.  On remand, the ALJ shall

12  reconsider Plaintiff's credibility in light of Dr. Carstens' January 2011 report indicating that

13  Plaintiff experiences breakthrough manic episodes even when medicated and sober, and shall

14  develop the record on this issue as necessary.  To the degree that this reconsideration

15  implicates the ALJ's findings at steps three and four, the ALJ shall reconsider those findings

16  as well.

17        DATED this <u>12th</u> day of June, 2013.

18

19        _____

20        Mary Alice Theiler
          United States Magistrate Judge

21

22

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -12